**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JANETTE G., | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:20-CV-01496 (JCH) |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF THE | : | |
| SOCIAL SECURITY ADMINSTRATION | : | FEBRUARY 2, 2022 |
| Defendant. | : | |

**RULING ON PLAINTIFF'S MOTION FOR AN ORDER REVERSING THE
COMMISSIONER'S DECISION (DOC. NO. 19) AND DEFENDANT'S CROSS-MOTION
FOR AN ORDER AFFIRMING THE COMMISSIONER'S DECISION (DOC. NO. 26)**

## I.      INTRODUCTION

Plaintiff Janette G.[1] ("Janette") brings this appeal under section 405(g) of title 42

of the United States Code from the final decision of the Commissioner of

the Social Security Administration ("SSA"), which denied her application for Title XVI

supplemental security income. See Complaint ("Compl.") (Doc. No. 1).  Janette filed a

Motion for an Order Reversing the Final Decision of the Commissioner (Doc. No. 19),

seeking vacatur and reversal of the Decision rendered by Administrative Law Judge

("ALJ") Edward F. Sweeney, which affirmed the Commissioner's denial.  See Motion for

an Order Reversing the Final Decision of the Commissioner ("Mot. to Reverse") (Doc.

No. 19).  The Commissioner moves for an Order affirming the ALJ's Decision.  See Mot.

for Order Affirming the Decision of the Comm'r ("Mot. to Affirm") (Doc. No. 26).

---

[1] The court notes that, throughout the Administrative Record and in briefing, the claimant's name is alternatively spelled "Janette" and "Jannette." The court will use the spelling "Janette" in keeping with the spelling used in the official case caption and in the claimant's signature on her briefing.

For the reasons set forth below, the plaintiff's Motion to Reverse is granted, and the Defendant's Motion to Affirm is denied.

## II.   BACKGROUND

### A.   Procedural Background

Janette protectively applied for supplemental security income on May 26, 2016, alleging a disability onset date of May 26, 2016.[2]  See AR at 21.  The Commissioner denied Janette's application initially on May 31, 2017, and upon reconsideration on October 26, 2017.  Id.  Janette requested a hearing before an ALJ, which was held before ALJ Sweeney on April 3, 2019.  Id.

On July 19, 2019, ALJ Sweeney issued an unfavorable decision for Janette, affirming the Commissioner's denial and finding that Janette was not disabled.  See id. at 31.  Specifically, the ALJ found that Janette did "not have a severe impairment or combination of impairments" because her conditions did not "significantly limit" her "ability to perform basic work activities."  Id.  The Appeals Council denied Janette's request for review on September 1, 2020. Id. at 1.  Following that denial, Janette filed this appeal on October 1, 2020.  See Compl.

### B.   Factual Background

While the parties did not file a joint stipulation of facts, many of the facts are undisputed.  Compare Plaintiff's Statement of Facts (Doc. No. 19-2) ("Janette SOF")

---

[2] Under certain circumstances, the Social Security Administration ("SSA") "will use the date a written statement, such as a letter, an SSA questionnaire or some other writing, is received at a social security office, at another Federal or State office designated by [the SSA], or by a person . . . authorized to receive applications . . . as the filing date of an application for benefits, only if the use of that date will result in [the claimant's] eligibility for additional benefits." 20 C.F.R. § 416.340.  When a filing date is established by a claimant's written statement, the claimant is deemed to have "protectively applied" on the date her written statement was received.

with Defendant's Response to Plaintiff's Statement of Facts  (Doc. No. 26-2) ("Comm'r SOF") (collectively, "SOFs").  The court adopts the parties' Statements of Fact to the extent the facts are agreed upon, and it will therefore only briefly describe the facts relevant to this Ruling.

Janette is a 51-year-old woman who applied for Title XVI benefits for dementia, anxiety, depression, left and right L4-L5 and L5-S1 facet joint syndrome and lumbar spondylosis with radiculopathy, bilateral knee pain, arthritis in her left hip and neck, glaucoma, carpal tunnel syndrome, trigger finger, hypertension, headaches, asthma, recurrent corneal erosion syndrome, thyroid cancer, and obesity.  SOFs at ¶ 2.  Janette found herself homeless throughout most of the period relevant to this appeal, and she has not worked since 2004.  Id. at ¶ 1.

The record, which spans from 2005 to 2019, contains several medical opinions, but only one is from a treating source. [3]  The treating source opinion is from psychiatrist Victor Tirado, M.D., who has seen Janette since 2005. See AR at 965.[4] It indicates that she suffers from major depressive disorder that would prevent her from working for twelve months or more and is markedly impaired in every category of mental functioning.  AR at 723-28.

---

[3] Because Janette filed her claim before March 27, 2017, the Regulations in section 416.927 of title 20 of the Code of Federal Regulations—often referred to as the "treating physician rule"—govern the evaluation of opinion evidence related to her claim. See 20 C.F.R. § 416.927.

[4] Dr. Tirado's opinion indicates that Janette has been "in treatment at the office" since 2011, see AR at 723, and the record contains progress notes signed by Dr. Tirado and dated 2005. See, e.g., id. at 962-63. Furthermore, Janette attended therapy with Licensed Clinical Social Worker Miriam Cardona, associated with Dr. Tirado's practice, from as early as January 2011 through at least September 2012, see, e.g., id. at 970, 971, 972, 973, 975, 976, 980, 982.

In a separate, November 2017 medical opinion, a non-treating Connecticut state team consisting of a Registered Nurse, an M.D., and a vocational reviewer found Janette disabled and unemployable with an onset date of January 1, 2005.  Id. at 951. Other non-treating examiners reached different conclusions.  In November 2016, consultative examiner Jesus Lago, M.D., also provided a psychiatric evaluation, in which he opined that Janette could adapt to a work setting.  Id. at 446-49.  Dr. Yacov Kogan conducted a consultative physical examination on January 3, 2017, after which he opined that Janette's sitting, standing, walking, bending, lifting, carrying, reaching, or finger manipulations would be only mildly limited by her generalized musculoskeletal pain.  Id. at 453.  Dr. Kogan also opined that Janette's mental functioning was not impaired.  Id.

Two state consultants reviewed Janette's records in January 2017 and opined that she had no severe mental or physical impairments.  Id. at 73-76.  In October 2017, two more state consultants reviewed the evidence in the record, finding that Janette had a moderate limitation in concentration, persistence, or maintaining pace and no severe physical impairments.  Id. at 78-91.  On May 6, 2019, psychologist Allison Podczerwinsky, PsyD, reviewed Janette's record and answered interrogatories, determining that Janette suffered from no more than mild limitations in each category of mental functioning.  Id. at 1295-98.

## III.   LEGAL STANDARD

The ALJ follows a five-step evaluation to determine whether a claimant is disabled within the meaning of the Social Security Act.  Only the first two steps are relevant to Janette's appeal.  At the first step, the ALJ considers whether the claimant is

currently engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).[5]  If not, the

ALJ proceeds to the second step and considers whether the claimant has a "severe

impairment" which limits his or her mental or physical ability to do basic work activities.

20 C.F.R. § 416.920(c).  While the claimant bears the burden of providing evidence to

establish severity, "[t]he standard for a finding of severity under Step Two of the

sequential analysis is de minimis and is intended only to screen out the very weakest

cases."  McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014).

Under section 405(g) of title 42 of the United States Code, the district court may

not review de novo an ALJ's decision as to whether the claimant was disabled.  See

Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). Instead, the court may only set aside

an ALJ's determination as to social security disability if the decision "is based upon legal

error or is not supported by substantial evidence."  Balsamo v. Chater, 142 F.3d 75, 79

(2d Cir. 1998).  Substantial evidence requires "more than a mere scintilla," but is a "very

deferential standard of review."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443,

447–48 (2d Cir. 2012).  It requires "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Id. at 448.  If the Commissioner's findings

of fact are supported by substantial evidence, those findings are conclusive, and the

court will not substitute its judgment for the Commissioner's. 42 U.S.C. § 405(g) (2016);

see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

---

[5] Here, the parties do not contest the ALJ's step one determination that Janette has not engaged
in substantial gainful activity since her alleged onset date, May 26, 2016. See AR at 23.

**IV.    DISCUSSION**

Janette challenges the ALJ's decision on the basis of three errors.  First, she argues that the ALJ failed to apply the treating physician rule.  Second, she argues that the ALJ erred in the weights he assigned to various medical opinions in the record. Third, she contends that the ALJ wrongly determined that her impairments were not severe at step two of his analysis.  The Commissioner disputes Janette's claims, arguing that the ALJ's decision was supported by substantial evidence and a fully developed record.

A.    <u>Treating Physician Rule</u>

Janette asserts that the ALJ failed to follow the treating physician rule, improperly discounting the opinion of her treating psychiatrist, Dr. Tirado.  <u>See</u> Plaintiff's Memorandum of Law at 11-16 (Doc. No. 19-1) ("Janette Mem.").  The Commissioner, by contrast, argues that the ALJ provided adequate justifications for his weighting decision. <u>See</u> Commissioner's Memorandum of Law 18-20 (Doc. No. 26-1) ("Comm'r Mem.").

Under the "treating physician" rule, the ALJ must give "more weight to medical opinions" from a claimant's "treating source" when determining if the claimant is disabled.  <u>See</u> 20 C.F.R. § 416.927(c)(2).  The rule applies to claims, like Janette's, filed before March 27, 2017.  <u>Id.</u>  As the Second Circuit has explained, an ALJ must follow specific procedures to determine the appropriate weight for a treating physician's opinion:

> First, the ALJ must decide whether the opinion is entitled to controlling weight. "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" [<u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008)]

(third brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)).[6] Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must "explicitly consider" the following, nonexclusive "<u>Burgess</u> factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." [<u>Selian v. Astrue</u>, 708 F.3d 409, 418 (2d Cir. 2013)] (citing <u>Burgess</u>, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." <u>Halloran v. Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)) . . . . An ALJ's failure to "explicitly" apply the <u>Burgess</u> factors when assigning weight at step two is a procedural error. <u>Selian</u>, 708 F.3d at 419-20.

<u>Estrella v. Berryhill</u>, 925 F.3d 90, 95-96 (2d Cir. 2019).

While an ALJ must weigh the <u>Burgess</u> factors he is not required to offer a "slavish recitation of each and every factor" if his "reasoning and adherence to the regulation are clear."  <u>Atwater v. Astrue</u>, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing <u>Halloran</u>, 362 F.3d at 31-32).  Furthermore, the Commissioner need not defer to a treating physician's opinion that is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  <u>Halloran</u>, 362 F.3d at 32 (citation omitted); <u>see also</u> <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999) ("the less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given.").

---

[6] The court notes that Regulations pertaining to supplemental security income claims and disability insurance claims have been promulgated by the Commissioner under two different Parts of the Code of Federal Regulations. The regulations at 20 C.F.R. § 404.15[XX], which govern Title II disability insurance claims, are largely identical to the regulations at 20 C.F.R. 416.9[XX], which govern Title XVI supplemental security income claims. <u>See, e.g.</u>, <u>Santiago v. Massanari</u>, No. 00 CIV.3847 GEL, 2001 WL 1946240, at *6 (S.D.N.Y. July 16, 2001).

Here, the ALJ erred in misapplying the treating physician rule.  The record contains a single medical opinion from a treating physician—that of Dr. Tirado, a psychiatrist who has treated Janette since 2005.  See AR at 962-63.  Dr. Tirado opined that Janette had marked limitations in all areas of mental health functioning, suffered from major depressive disorder, and would be off task for greater than 25% of the workday.  See id. at 723-28.  The ALJ afforded Dr. Tirado's opinion "little weight."  Id. at 31.  However, the ALJ failed to weigh the Burgess factors in assigning the opinion's weight.  Specifically, the ALJ did not consider the "frequency, length, nature, and extent" of Dr. Tirado's years-long treatment of Janette, nor did he account for Dr. Tirado's specialization in psychiatry.  See Burgess, 537 F.3d at 129; see also Hallett v. Astrue, No. 3:11-CV-1181 VLB, 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) ("What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ" is the "opportunity to develop an informed opinion as to the . . . status of a patient.").

The ALJ's failure to consider these two factors constitutes reversible error if the record does not provide other "good reasons" for the ALJ's assignment of "little weight."  See Estrella, 925 F.3d 96-98 ("An ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight at step two is a procedural error.").  The record in this case reflects no "good reasons" for his decision to accord "little weight" to Dr. Tirado's opinion.  See id. at 96.  To justify his weight assessment, the ALJ stated that the opinion was "not well supported by Dr. Tirado's own examinations during which the claimant exhibited normal speech, generally normal thoughts, generally normal insight, generally normal judgment and no perceptual abnormalities."  See AR at 31.  Further, the ALJ

8

indicated that the opinion was "inconsistent" with record evidence of "cooperative nature with a normal mood, normal affect, normal thought process, normal thought content, normal memory, normal concentration, normal speech, normal eye contact, normal insight and normal judgment without perceptual abnormalities." Id. (citing Exs. 4F, 5F, 8F, 13F, 20F). To reach these conclusions, however, the ALJ improperly "cherry picked" evidence from the record, ignoring conspicuous signs of a more severe mental health condition. See, e.g., Quinto v. Berryhill, No. 3:17-cv-24 (JCH), 2017 WL 6017931, at *14 (D. Conn. Dec. 1, 2017) (finding an ALJ improperly "cherry-picked" evidence disfavoring the claimant when the record contained mixed evidence).

Treatment notes from Dr. Tirado's examinations paint a more troubling picture than the ALJ suggested. The ALJ cited to exhibits 16F (2005 through 2017 notes), 17F (January and February 2017 notes), and 18F (2018 and 2019 notes) for the proposition that Janette had exhibited normal speech, thoughts, insight, and judgment during her meetings with Dr. Tirado. However, Dr. Tirado's notes consistently report difficulty with memory loss and comprehension. On June 24, 2016, she presented with a dysthymic mood and showed loosely associated thoughts. See AR at 1042. In September of the same year, she reported anxiety and showed an anxious mood with diffuse memory loss. Id. at 1048. She again demonstrated memory loss on October 14, 2016. Id. at 1050. On November 11 of the same year, Dr. Tirado noted that she seemed worse, with an anxious mood and memory loss. Id. at 1052. This continued into 2017, when January treatment notes show low tolerance to stress, less socializing, anxious mood and diffuse memory loss. Id. at 1056. In February 2017, he noted that Janette showed a low tolerance to stress, although she reported an overall stable mood. Id. at 1060.

Dr. Tirado's treatment notes continued to chronicle diffuse memory loss, circumstantial thoughts, anxiety, depression, and dysthymic mood throughout 2017 and 2018.  See, e.g., id. at 1064, 1066, 1069, 1071, 1074, 1077, 1079, 1081, 1083.

The Commissioner points out that Janette exhibited some positive signs during several of her appointments with Dr. Tirado, including normal speech, fair insight, fair judgment, cooperative nature, normal vocabulary, a goal-oriented thought process, and an appropriate affect.  See, e.g., id. at 1042, 1048, 1052, 1064, 1069, 1074, 1079, 1081. However, appointment notes from the very same sessions report diffuse memory loss, anxious mood, and other troubling symptoms.  See 1042 (loosely associated thoughts), 1048 (anxious mood, diffuse memory loss), 1052 ("not doing well and seems worse", depressive symptoms, anxiety), 1064 (dysthymic mood, diffuse memory loss), 1069 (dysthymic mood, diffuse memory loss, easily distracted), 1074 (diffuse memory loss, easily distracted), 1079 (dysthymic mood, poor sleep, diffuse memory loss, easily distracted), 1081 (socializing less, depressed mood, diffuse memory loss, needs assistance with domestic tasks).  Janette's minimal signs of mental health, such as normal speech or vocabulary, provide little insight as to the extent of her mental illness or its impact on her ability to work—especially given the countervailing evidence indicating mental illness.  See, e.g., White v. Berryhill, No. 3:17-CV-01310 (JCH), 2018 WL 2926284, at *5 (D. Conn. June 11, 2018) (determining that notes showing a claimant met "minimum standards of mental health—such as being alert and well groomed—while he lacked signs of extreme instability—such as suicidal or homicidal thoughts" did "not convey meaningful information about [the claimant's] mental condition that could allow for a useful evaluation of [the treating physician's] opinion.").  The ALJ

and the Commissioner have undertaken textbook, impermissible "cherry picking" by leaning heavily on a few positive indicators while ignoring the serious, ongoing symptoms described in the very same treatment notes.  See Quinto, 2017 WL 6017931, at *14.

Outside of Dr. Tirado's own notes, the record evidence is also mixed and does not provide good reasons for assessing "little weight" to his decision.  The ALJ cited to exhibits 4F, 5F, 8F, 13F, and 20F as inconsistent with Dr. Tirado's opinion.  However, exhibits 8F, 13F, and 20F are records unrelated to mental health treatment, and are not relevant to Dr. Tirado's opinion.  Exhibit 4F is the opinion of Consultative Examiner Jesus Lago, who examined Janette on one occasion on November 21, 2016. AR at 446. Similarly, Exhibit 5F is the opinion of Yacov Kogan, M.D., who saw Janette once.  See id. at 450-54.  While these two providers did report, after a single session each, that Janette was "capable of adapting to work setting", see id. at 449, and that she was "not limited" by mental illness, see id. at 453, both examiners had only a brief opportunity to assess Janette.

As the Second Circuit has "frequently cautioned", "ALJs should not rely heavily on the findings of consultative physicians after a single examination."  Selian, 708 F.3d at 419.  In a recent decision, the Circuit emphasized that "[t]his concern is even more pronounced in the context of mental illness where, as discussed above, a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." Estrella, 925 F.3d 90, 98 (determining a consultative examiner's report did not provide a "good reason" for minimizing a treating physician's opinion where the ALJ relied upon the examiner's report without "grappling with" the claimant's "fluctuating state of mental

health").  Here, the ALJ afforded less weight to Dr. Tirado's opinion in favor of two providers who examined Janette once.  The ALJ did not meaningfully consider Janette's long-term mental health in relying on Drs. Kogan and Lago's "snapshot" reports.  Thus, their opinions do not provide "good reasons" for discounting Dr. Tirado's opinion.

In addition to the exhibits that the ALJ expressly cited as contradicting Dr. Tirado's treating medical opinion, the ALJ's Decision also references the three other opinions in the record that assess Janette's mental state: that of Dr. Podczerwinsky, see id. at 1295-1298, that of Dr. Billinghurst, see id. at 68-76, and that of Dr. Leveille, see id. at 78-91.  However, none of these providers' assessments provide "good reasons" for discrediting Dr. Tirado's analysis. As to Dr. Billinghurst, he is a gastroenterologist,[7] not a mental health expert.  See id. at 73-74.  He assessed Janette's physical impairments at the initial determination level.[8]  With respect to Dr. Leveille, he is a state consultant and psychologist who offered his opinion at the reconsideration level on the basis of a review of the record, which, at the time, contained none of Dr. Tirado' s psychiatric treatment notes.[9]  See id. at 79-82 (listing records reviewed by Dr. Leveille and

---

[7] Dr. Billinghurst's opinion is signed with the medical consultant code 013, which indicates a specialty in gastroenterology. See DI 24501.004 Medical Specialty Codes, Program Operations Manual System (POMS), Social Security Administration, https://secure.ssa.gov/poms.nsf/lnx/0424501004 (last visited Jan. 26, 2021).

[8] It appears that the ALJ may have conflated Dr. Billinghurst's opinion regarding Janette's physical impairments with the opinion of another reviewer: psychologist Susan Uber, PhD. See AR at 74-75. It was Dr. Uber who determined that Janette's anxiety and affective disorders were not severe. Id. However, Dr. Uber, like Dr. Leveille, reached her opinion on the basis of a record that included none of Dr. Tirado's treatment notes. See id. at 69-76.

[9] Notably, even without the benefit of a complete record containing Dr. Tirado's notes, Dr. Leveille opined that Janette exhibited moderate limitations in "concentration, persistence, and pace", identifying a moderate limitation that would have satisfied the de minimus requirements necessary to satisfy step two analysis if the ALJ had lent that part of Dr. Leveille's opinion any weight.  See Schafenberg v. Saul, 858 F. App'x 455, 456 (2d Cir. 2021) ("While a mental impairment rated as 'none' or 'mild' generally will not qualify as 'severe,' those rated as 'moderate,' 'marked,' or 'extreme' will qualify as 'severe' under step

indicating that Dr. Tirado's treatment notes had been requested, not reviewed).  Finally, Dr. Podczerwinsky, a PsyD in forensic psychology, determined, on the basis of the record and without personally examining Janette, that Janette had only mild impairments in her mental health functioning.  See id. at 1290, 1296.  In sum, none of these providers personally examined Janette, and only one—Dr. Podczerwinsky— formed her opinion on the basis of a record that included Dr. Tirado's treatment notes.

Multiple courts in this Circuit have held that "[g]reat weight should not be accorded to the opinion of a non-examining State agency consultant whose opinion is based on an incomplete record . . . ."  Lewis v. Colvin, 122 F. Supp. 3d 1, 8 (N.D.N.Y. 2015) (citing Coleman v. Colvin, 2015 WL 1190089, at *10 (S.D.N.Y. Mar. 16, 2015); Girolamo v. Colvin, 2014 WL 2207993, at *8 (W.D.N.Y. May 28, 2014)); see also 20 C.F.R. § 416.927(c)(6) ("[T]he extent to which a medical source is familiar with the other information in your case record [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion.").  Thus, the ALJ erred in assessing great weight to Dr. Billinghurst's (or, Dr. Uber's) opinion, see AR at 30, which was formed without examining Janette and on the basis of a record that lacked Dr. Tirado's treatment notes.  Dr. Billinghurst's (or, Dr. Uber's) opinion therefore offers no "good reason" for the ALJ's decision to accord Dr. Tirado's opinion "little weight."  By the same rationale, Dr. Leveille's opinion, also reached without a complete record or a personal examination of Janette, does not provide a "good reason" for discounting Dr. Tirado's opinion.

---

two, thus requiring the administrative law judge . . . to proceed to the third step in the sequential process."); see also pp. 17-19 infra (discussing the de minimus standards applicable at step two).

Having determined that neither the "snapshot" opinions of consultative examiners Drs. Lago and Kogan nor the incomplete-record-based opinions of Dr. Billinghurst (or, Dr. Uber) and Dr. Leveille, constitute "good reasons" for the ALJ's weighting decision, only Dr. Podczerwinsky's opinion remains.  Although Dr. Podczerwinsky reached her opinion regarding Janette's mental health with the benefit of a full record, her opinion does not provide a "good reason" for the ALJ's decision to accord Dr. Tirado's opinion little weight.  The ALJ is, of course, permitted to assign less-than-controlling weight to a treating physician's opinion when the ALJ finds such an opinion inconsistent with substantial evidence in the record.  . See Snell, 177 F.3d at 133.  However, as Judge Underhill has observed:

> Although inconsistency between a treating physician's and consulting physician's opinions can represent a sufficient inconsistency to justify not according binding weight to the treating physician's opinion, Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."), it would be circular to allow that same inconsistency, by itself, to determine the relative weight to be accorded the consulting and treating physicians' respective opinions.

Walters v. Berryhill, No. 3:16-CV-02113 (SRU), 2018 WL 2926575, at *7 (D. Conn. June 11, 2018); see also Melendez v. Astrue, No. 08-CV-6374 (LBS), 2010 WL 199266, at *3 (S.D.N.Y. Jan. 20, 2010) (reversing and remanding when an ALJ failed to provide "good reasons" for affording limited weight to a treating physician's opinion in favor of a non-treating expert's opinion, but rather weighed the "dueling" opinions, ultimately finding the non-treating opinion more persuasive); Daniels v. Comm'r of Soc. Sec., No. 19-CV-06788, 2020 WL 6253304, at *5 (W.D.N.Y. Oct. 23, 2020) ("Even when a non-examining opinion . . . is given great weight, it alone cannot be considered substantial evidence, nor can it constitute a 'good reason' for the limited weight given to a treating

source opinion." (internal quotation marks omitted)). Here, the inconsistency between Dr. Podczerwinsky's assessment and that of Dr. Tirado cannot, in and of itself, provide a "good reason" for discrediting Dr. Tirado's opinion. Where, as here, the record reflects an ongoing history of mental health conditions such that the court can discern no substantial evidence that would support Dr. Podczerwinsky's opinion over that of treating physician Dr. Tirado, the lack of congruence between the two opinions does not constitute a "good reason" for according the treating physician's opinion little weight.

The ALJ also attempted to justify his weighting of Dr. Tirado's opinion by suggesting the opinion was unsubstantiated. To support his decision to afford Dr. Tirado's opinion little weight, the ALJ speciously stated that Dr. Tirado failed to "offer any explanation for the extreme limitations" that he diagnosed in his opinion. AR at 31. To relay his opinion, Dr. Tirado filled out Medical Report Form W-300SA from the Connecticut Department of Social Services. Id. at 722-28. On pages two and three of that Form, he explained that Janette suffers from Major Depressive Disorder, decreased energy, poor tolerance to stress, poor attention, and poor concentration. Id. at 723. He specified, on page three of the Form, that her poor energy and poor tolerance for stress were "due to her depression." Id.at 724. He further described the interaction between her depression and her physical impairments, noting, "Her current medical complications are affecting her capacity to work as well. She has an out of control thyroid secondary to her treatment of cancer. Low thyroid is associated with a worse depression." Id. On pages 5 and 6 of the Form, Dr. Tirado checked boxes indicating that Janette would be off task for more than 25% of the day, that she was incapable of tolerating even low stress, and that she was "markedly limited" in the fields of memory

15

and understanding, social interaction, sustained concentration and persistence, and adaptation.  Id. at 726-27.  While the Form did not provide space for Dr. Tirado to explicate each checked box, his detailed comments on the first few pages of the Form support the elections he made on the final two pages.  Thus, the Form, read in full, adequately clarifies the limitations Dr. Tirado prescribed, and the ALJ's decision to lend little weight to Dr. Tirado's opinion is not supported by the ALJ's unsupported, conclusory statement of a purported lack of explanation.

Finally, the Commissioner, in briefing, attempts to justify the ALJ's error by suggesting that the ALJ "implicitly considered" the treating relationship between Dr. Tirado and Janette "by citing and discussing Dr. Tirado's examination findings." Comm'r's Mem. at 19.  However, the ALJ failed to acknowledge that Dr. Tirado was a treating physician—much less consider the lengthy treatment relationship he shared with Janette.  Furthermore, the ALJ did not cite a single finding from Dr. Tirado's opinion in the ALJ's assessment of Janette's mental functioning.  See AR at 28-29.  Thus, there is no evidence that the ALJ accounted for the two undiscussed Burgess factors—the "frequency, length, nature, and extent" of the treating relationship and Dr. Tirado's specialization as a psychiatrist.

Because the ALJ failed to consider the Burgess factors and this court's searching review of the record reveals no "good reasons" for according "little weight" to the opinion of Janette's treating physician, the ALJ "traversed the substance of the treating physician rule."  See Estrella, 925 F.3d at 98.  Accordingly, the ALJ's decision must be vacated and remanded for further proceedings consistent with procedural mandates of the Social Security Act and the Second Circuit.  See id.; see also Pratts v. Chater, 94

F.3d 34, 39 (2d Cir. 1996) (noting that remand is appropriate where a reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision") (internal quotation marks and citation omitted); Duncan v. Astrue, No. 09-CV-4462 (KAM), 2011 WL 1748549, at *18 (E.D.N.Y. May 6, 2011) (remanding where the ALJ did not explain his reasons for giving claimant's treating physician "reduced weight" beyond conclusory statements).

      B.      Substantial Evidence for Step Two Denial

      Janette also argues that the ALJ erred in denying her claim at step two of his analysis.  See Janette Mem. at 1-11.  The Commissioner counters that the ALJ properly considered Janette's medical impairments and concluded that they were not severe. See Comm'r Mem. at 4-20.

      While, generally, the court deferentially reviews an ALJ's findings to determine whether they are supported by substantial evidence, the Second Circuit has consistently held that "the standard for a finding of severity under [s]tep [t]wo of the sequential analysis is de minimis and is intended only to screen out the very weakest cases."  McIntyre, 758 F.3d at 151; see also Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) (echoing the Supreme Court's statement that "[s]tep [t]wo may do no more than screen out de minimis claims") (citing Bowen v. Yuckert, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring)).  A claim may be denied at step two "only if the evidence shows that the individual's impairments . . . do not have more than a minimal effect on the person's physical or mental abilit[ies] to perform basic work activities." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985); see also Schafenburg v. Saul, 858 F. App'x 455, 456 (2d Cir. 2021).  "Basic work activities" include:

. . . walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations. . . dealing with changes in a routine work setting.

20 C.F.R. § 416.922(b)(1)-(6).  If a finding of non-severity "is not <u>clearly established by medical evidence</u>, however, adjudication must continue through the sequential evaluation process."  <u>Schafenburg</u>, 858 F. App'x at 456 (emphasis in original).

Here, the court has already determined that remand is warranted, and thus will not undertake a detailed analysis of the ALJ's step two determination that Janette's impairments are not severe.  The court cautions, however, that on remand, the ALJ should reconsider whether any combination of Janette's myriad medically determinable impairments—a history of thyroid cancer, glaucoma, hypertension, lumbar spine degenerative disc disease, carpal tunnel syndrome, degenerative joint disease of the knee, asthma, obesity, anxiety disorder, and affective disorder—have significantly limited her ability to perform basic work-related activities for twelve consecutive months. <u>See</u> AR at 24.[10]

---

[10] For instance, substantial evidence does not support the ALJ's determination that the Janette's history of thyroid cancer was "nonsevere" because it "did not require significant treatment and caused no more than minimal limitation in functioning." <u>Id.</u> at 25. The record indicates that Janette was diagnosed with thyroid cancer in August 2016, <u>id.</u> at 631, had a mass excised in February 2017, <u>id.</u> at 548, then underwent a total thyroidectomy in March 2017. <u>Id.</u> at 521. Janette did show some positive responses to her initial surgery, denying postoperative pain, <u>id.</u> at 628, and tolerating the surgery well. <u>Id.</u> at 634. However, she was seen on May 6, 2017, for neck and face pain, which she had since the surgery. <u>Id.</u> at 620. Her thyroid problems worsened in October of the same year, when she felt sluggish and gained weight, although an August report from her doctor identified no evidence of recurrence. <u>Id.</u> at 745, 711. In January 2018, Janette tested positive for metastatic thyroid tissue and a thyroid remnant, and she was admitted to the hospital for high-dose radioiodine therapy. <u>Id.</u> at 863. On August 24, 2018, she was seen for a malignant neoplasm of the thyroid gland, where it was noted that she likely had remnant thyroid tissue and had suffered swelling and neck pain for the month prior. <u>Id.</u> at 1172.  Notes from a February 22, 2019 appointment indicate that Janette continued to complain of swelling, and that she would continue to undergo Thyrogen-stimulated iodine scans to check for recurrent cancer for through 2023. <u>Id.</u> at 1268. While her March 2019 scan showed no suspicious lymphadenopathy (swelling of the lymph nodes), <u>see id.</u> at 1276-77, it is nonetheless clear that Janette underwent serious treatment for her thyroid cancer. The ALJ's assertion that Janette's condition did not require "significant treatment" and thus is

Furthermore, the ALJ should consider the interaction between the various impairments from which Janette suffers, as his Decision offered only a conclusory statement that "the claimant's physical and mental impairments, considered singly and in combination, do not significantly limit the claimant's ability to perform basic work activities."  See, id. at 31; c.f. id. at 723 (opining that Janette's thyroid disorder exacerbates her depression).  Such failure to assess the combined effect of a claimant's impairments is reversible error itself.  See Kolodnay v. Schweiker, 680 F.2d 878, 880 (2d Cir. 1982) (holding that an ALJ is required to consider whether, when combined, a claimant's impairments are severe).

While the court will not discuss Janette's impairments in detail, on remand, the ALJ should evaluate their severity with an eye toward the de minimus standard prescribed by the Second Circuit for step two analysis and consider their combined impact on Janette's ability to carry out basic work activities.

## V.    CONCLUSION

For the foregoing reasons, the plaintiff's Motion to Reverse is granted and the defendant's Motion to Affirm is denied.  The court vacates the ALJ's Decision and remands for further proceedings.  The plaintiff's Motion for Waiver of Page Limitation (Doc. No. 20), consented to by the defendant, is also granted, nunc pro tunc.  The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the District Judge who issued this Ruling.

---

"nonsevere" is far from "clearly established by the medical evidence" where she was subjected to surgery and radiation therapy. See id. at 25.

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of February 2022.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge